**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STATE FARM FIRE AND CASUALTY** | : | |
| **COMPANY,** | : | |
| **Plaintiff** | : | **No. 1:15-cv-02389** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **LEROY JUMPER,** | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Before the Court is Plaintiff State Farm Fire and Casualty Company's motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Doc. No. 14.)  For the

reasons that follow, the Court will grant the motion.

**I.   BACKGROUND**

The present action for declaratory judgment arose out of a fire that occurred at the home

of Ralph Weidner on September 8, 2013 and a lawsuit filed in federal court on July 2, 2015.

(Doc. Nos. 1 ¶¶ 21-23; 4-1 ¶ 13; <u>see</u> Doc. No. 8 ¶ 23.)

On July 2, 2015, Unitrin Auto and Home Insurance Company, as subrogee of Ralph

Weidner, filed an action ("Underlying Action") against Defendant Jumper, alleging that the

September 8, 2013 house fire was caused by Defendant's "negligent, careless and/or reckless

acts and/or omissions."[1]  (Doc. No. 4-1 ¶¶ 17, 18; 14-3 ¶¶ 17-18; 15 ¶¶ 10, 11; 18 ¶¶ 10, 11.)

According to the underlying complaint, Ralph Weidner allegedly hired Defendant Jumper to

investigate and repair circuit breakers that had been tripping at Weidner's home.  (Doc. Nos. 14-

3 ¶10; 15 ¶ 10; 18 ¶ 10.)  The underlying complaint alleges that: (1) Defendant Jumper installed

---

[1] On February 16, 2016, Unitrin Auto and Home Insurance Company amended its
complaint against Defendant Jumper.  (Doc. No. 14-3.)  The Court refers to the amended
complaint in the Underlying Action as the "underlying complaint."

"larger sized circuit breakers" to address the problem; (2) the September 8, 2013 fire "originated in the electrical wiring" of Weidner's home; and (3) the damage to Weidner's home was caused by Defendant Jumper, <u>inter alia</u>, "carelessly and improperly repairing the electronical system" at Weidner's home.[2]  (Doc. No. 14-3 ¶¶ 12, 13, 17; 15 ¶¶ 10, 11; 18 ¶¶ 10, 11.)

Plaintiff State Farm Fire and Casualty Company issued a homeowners policy, No. 38-E5-6609-4 ("the Policy"), to Defendant Jumper for the period between April 5, 2013 and April 5, 2014.  (Doc. Nos. 1 ¶ 8; 8 ¶ 8.)  Plaintiff has since provided Defendant a defense to the Underlying Action pursuant to three reservation of rights letters.[3]  (Doc. Nos. 1 ¶ 12; 8 ¶ 12.) However, on December 11, 2015, Plaintiff filed the above-captioned action seeking a declaratory judgment that it owes no obligation to defend or indemnify Defendant Jumper for claims arising out of the Underlying Action.[4]  (Doc. No. 1 ¶¶ 14, 32, 43-44; 48-49.)  First, Plaintiffs contend that the claims asserted in the Underlying Action "do not fall within the Insuring Agreement of the Policy" because the Underlying Action's complaint does not allege an "occurrence."  (<u>Id.</u> ¶¶ 28-32.)  Second, Plaintiffs argue that the Policy's "business pursuits exclusion" applies to Defendant's claim for coverage.  (<u>Id.</u> ¶¶ 34, 36-37, 40-43.)

---

[2] On November 25, 2016, upon notification in the Underlying Action that the parties consented to proceed before a United States Magistrate Judge, the Underlying Action was reassigned to Magistrate Judge Schwab.  (<u>See</u> Doc. Nos. 10, 11, 12; 15-cv-01312.)

[3] Plaintiff insurer sent Defendant insured a reservation of rights letter on August 17, 2015 (Doc. No. 4-2 at 2-4), on November 23, 2015 (Doc. No. 4-3 at 2-4), and on March 16, 2016 (Doc. No. 16-3 at 2-4).

[4] Plaintiff filed the present action for declaratory judgment "pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201."  (Doc. No. 1 ¶ 7.)  The Declaratory Judgment Act, 28 U.S.C. § 2201, "allows a court to declare the rights of parties to an insurance contract, including the extent to which a policy obligates an insurer to defend or indemnify an insured."  <u>Bituminous Cas. Corp. v. John W. Gleim, Jr., Inc.</u>, No. 07-2287, 2009 WL 473034, at *2 (M.D. Pa. Feb. 24, 2009) (internal citations omitted).  The parties do not dispute that Pennsylvania substantive law applies.

On January 20, 2016, Defendant filed an answer to Plaintiff's complaint for declaratory judgment.  (Doc. No. 8.)  Plaintiff filed a motion for summary judgment on March 29, 2016. (Doc. No. 14.)  In its motion for summary judgment, Plaintiff submits only its first argument – that "the allegations of the Underlying Action do not constitute an 'occurrence' under the Policy."  (Id. ¶ 25.)   The motion for summary judgment has been fully briefed and is ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Thus, where no material fact is in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Anderson, 477 U.S. at 248.  Conversely, where there is a dispute as to an issue of material fact, the moving party must establish that the factual dispute is not a genuine one.  Id.

The party moving for summary judgment bears an initial burden of identifying evidence that it believes demonstrates the absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has carried

this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988).  In deciding a motion for summary judgment, the court need not accept allegations that are merely conclusory in nature, whether they are made in the complaint or a sworn statement. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).  Moreover, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. Anderson, 477 U.S. at 249.  Rather, the court must simply "determine whether there is a genuine issue for trial." Id.

## III.    DISCUSSION

In its motion for summary judgment, Plaintiff contends that it has no duty to defend or indemnify Defendant because the allegations in the Underlying Action do not constitute an

4

"occurrence" under the Policy.  (Doc. No. 16 at 6.)  Defendant responds that the Underlying

Action brings a "claim for negligent work," Plaintiff has an obligation to defend Defendant for a

loss caused by a fire, and that Plaintiff's November 23, 2015 reservation of rights letter "should

be deemed untimely."  (Doc. No. 17.)  The Court first addresses Defendant's untimeliness

argument.

### A.    Timeliness of Plaintiff's Reservation of Rights

Defendant urges this Court to deem Plaintiff' second reservation of rights letter as

untimely and, by extension, Plaintiff's "non-occurrence argument" as waived.  (See Doc. No. 17

at 13-14.)  Defendant argues that he had no notice that the allegations of the Underlying Action

might not qualify as an "occurrence" until he received the second reservation of rights letter,

dated November 23, 2015.  (Id. at 13.)  Defendant stresses that more than six months passed

between the commencement of the Underlying Action and the second reservation of rights letter.

(Id.)  Plaintiff responds that Defendant's timeliness argument overlooks that the complaint in the

Underlying Action was amended on February 16, 2016 and that Plaintiff cited the "relevant

language of the Policy at issue" in its reservation of rights letters.  (Doc. No. 19 at 4-7.)

"Under Pennsylvania law, an insurer is not estopped from denying coverage when … the

insured received a timely reservation of rights letter."  St. Leger v. Am. Fire & Cas. Ins. Co., 870

F. Supp. 641, 644 (E.D. Pa. 1994), aff'd, 61 F.3d 896 (3d Cir. 1995).  However, the "[f]ailure to

provide timely notice of a reservation of rights may preclude the insurer from later denying a

duty to defend and/or a duty to indemnify its insured.  When a party seeks to estop an insurer

from withdrawing from a case, the burden is on the party asserting the estoppel claim to establish

that defense by clear, precise, and unequivocal evidence."  Transportation Ins. Co. v. C.F. Bordo,

Inc., No. 06-2386, 2009 WL 839366, at *5 (M.D. Pa. Mar. 30, 2009) (Vanaskie, J.) (internal

citation omitted).

For example, in Erie Insurance Exchange v. Lobenthal, the Superior Court of

Pennsylvania concluded that an insurer's reservation of rights letter, sent seven months after the

filing of the underlying complaint, was untimely.  114 A.3d 832, 840 (Pa. Super. Ct. 2015).  In

that case, the passenger of a car – who suffered injuries in a car accident – brought the

underlying action against the driver and a family whose daughter had hosted a party preceding

the accident.  Id. at 834-35.  The underlying complaint alleged that the daughter – an additional

insured under her family's insurance policy – "encouraged the use of controlled substances at the

party" and provided the driver in the car accident with controlled substances.  Id. at 838-89.

In Erie, although the insurer was "on notice" that the underlying "allegations fell under

the controlled substances policy exclusion," the insurer did not send the second reservation of

rights letter, which first referenced the policy's controlled substances exclusion, until seven

months after the underlying complaint was filed and three months after the disposition of

preliminary objections.  Id. at 837, 839.  The Superior Court of Pennsylvania reasoned that

prejudice, under the circumstances, could be "fairly presumed," as follows:

> [The insurer] waited to send its reservation of rights letter until over three months
> had passed from disposition of its preliminary objections and the only remaining
> claim related to [the daughter's] alleged furnishing of controlled substances,
> which was clearly excluded from coverage. . . . Had [the daughter] been informed
> of [the insurer's] intention to deny coverage when the suit was filed, she could
> have engaged separate counsel and managed her own defense.

Id. at 839.  After considering the insurer's untimely reservation of rights letter and the fact that

the insurer never provided the daughter with "actual notice" of its position, the Superior Court of

Pennsylvania reversed and remanded the lower court's order with instructions to enter judgment

in the declaratory judgment action in favor of the daughter.  See id. at 840.

Here, Plaintiff insurer first raised its "non-occurrence argument" in the second reservation of rights letter, dated on November 23, 2015. (Doc. No. 4-3 at 2-4.) In the second reservation of rights letter, Plaintiff informed Defendant Jumper, in relevant part, as follows:

> Additional information has come to light, and We wish to call your attention to the fact that we specifically reserve our right to deny defense or indemnity to you … for the following reasons: there is a question whether the property damage alleged arose from business pursuits of any insured. It is questionable whether the definition of occurrence has been met.

(Doc. No. 4-3 at 2.) Plaintiff also included the definition of an "occurrence," as defined in the Policy, in the letter. (Id. at 4.) At that point, in the Underlying Action, a case management conference had been scheduled and Defendant Jumper had filed an answer to the July 2, 2015 complaint. (Doc. Nos. 1, 7, 8; 15-cv-01312.) However, on February 16, 2016, approximately three months after the second reservation of rights letter, the complaint in the Underlying Action was amended with Defendant's written consent. (Doc. Nos. 15, 16; 15-cv-01312.)

This Court cannot presume prejudice to Defendant Jumper where Plaintiff notified Defendant of the insurer's "non-occurrence argument" three months prior to the filing of the operative complaint. Moreover, Defendant's unsupported contention that "this would be a very different case" – were Plaintiff to have provided Defendant with the non-occurrence argument in its August 17, 2015 reservation of rights letter – does not constitute the "clear, precise, and unequivocal evidence" needed to raise a genuine dispute as whether Plaintiff is estopped from denying coverage. Accordingly, the Court declines to find Plaintiff's second reservation of rights letter untimely or its "non-occurrence argument" waived.

## B.    Definition of Occurrence

As discussed above, Plaintiff contends that it has no duty to defend or indemnify Defendant because the allegations in the Underlying Action do not constitute an "occurrence" under the Policy. (Doc. No. 16 at 6.) Plaintiff stresses that the underlying allegations are that

7

Weidner's home was damaged by Defendant's allegedly defective work, not by an accident or conduct that otherwise could be "construed as negligent or fortuitous events."[5]  (Id. at 10-11.) Defendant responds that the Underlying Action brings a "claim for negligent work" and that Plaintiff has an obligation to defend Defendant for a loss caused by a fire.  (Doc. No. 17.)  In particular, Defendant reasons that "the Underlying Complaint does not allege that [Defendant] Jumper's work installing the larger sized circuit breakers was faulty, but rather that his decision to do so to fix the problem with the electrical system at the Property was negligent."  (Id. at 9, 11, 14.)

"An insurance company's duty to defend a suit against an insured is determined solely on the basis of the allegations of the complaint in the underlying action."[6]  Westfield Ins. Co. v. Bellevue Holding Co., 856 F. Supp. 2d 683, 691 (E.D. Pa. 2012) (internal citations and quotations omitted); see Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006) ("[A]n insurer's duty to defend and indemnify [is to] be determined solely from the language of the complaint against the insured") (internal citations omitted).  "To decide whether a duty to defend exists, the court must compare the allegations in the complaint with the provisions of the insurance contract and determine whether, if the complaint allegations are proven, the insurer would have a duty to indemnify the insured." Keystone Spray Equip., Inc. v. Regis Ins. Co., 767 A.2d 572, 574 (Pa. Super. Ct. 2001) (citing Gene's Restaurant v. Nationwide Insurance Company, 548 A.2d 246, 246 (Pa. 1988)).

---

[5] Plaintiff also reasons that conclusory allegations of negligence do not constitute an "occurrence" where "there are no factual allegations to support such claims."  (Doc. No. 16 at 11-13.)

[6] "If an insurer does not have a duty to defend, it does not have a duty to indemnify. However, 'both duties flow from a determination that the complaint triggers coverage.'"  Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 83 A.3d 418, 421 (Pa. Super. Ct. 2013).

The Policy defines "occurrence" as "an accident, including exposure to conditions, which first results in: a. bodily injury; or b. property damage; during the policy period. All bodily injury and property damage resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one occurrence." (Doc. No. 14-2.)  The policy does not define the term "accident" for purposes of delineating an "occurrence."  (Id.)  For guidance, this Court turns to the Supreme Court of Pennsylvania's conclusion "that the term 'accident' within insurance polices refers to an unexpected and undesirable event occurring unintentionally, and that the key term in the definition of the 'accident' is 'unexpected' which implies a degree of fortuity." Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 292 (Pa. 2007) (internal citation omitted).  "An injury therefore is not 'accidental' if the injury was the natural and expected result of the insured's actions." Id. at 292 (internal citation omitted).

In particular, the Supreme Court of Pennsylvania has held that "the definition of 'accident' required to establish an 'occurrence' under" two commercial general liability policies "cannot be satisfied by claims based upon faulty workmanship.  Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction in this context." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 899 (Pa. 2006).  Since the Kvaerner decision, courts sitting in Pennsylvania "have consistently held that claims based upon faulty workmanship do not amount to an 'occurrence' that triggers an insurer's duty to defend." Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am., No. 15-6509, 2017 WL 345636, at *6 (E.D. Pa. Jan. 23, 2017) (collecting cases).

For example, in <u>Specialty Surfaces International, Inc.</u>, the United States Court of Appeals for the Third Circuit affirmed a district court's grant of summary judgment in favor of appellee insurer on the basis that the underlying allegations did not constitute an occurrence. <u>Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.</u>, 609 F.3d 223, 227 (3d Cir. 2010). In that case, subcontractor Empire – an additional insured and subsidiary of insured manufacturer Specialty Surfaces – was hired to install synthetic turf fields and drainage systems in the fields of a California school district. <u>Id.</u> at 227. The school district filed suit against Specialty Surfaces for "defects in materials and workmanship" and "unstable playing surfaces" that resulted from water leaking. <u>Id.</u> at 228. In its amended complaint, the school district added Empire as a defendant and alleged, <u>inter alia</u>, that Empire's negligence in "designing, manufacturing and installing the subdrain system and liner" caused "damage to the turf, the subdrain system, the liner, and the subgrade." <u>Id.</u> at 228, 238.

Empire and Specialty Surfaces, collectively referred to as "Sprinturf," sought a declaratory judgment "that the insurer had a duty to defend and to indemnify" Sprinturf against the school district's lawsuit. <u>Id.</u> at 229. The district court entered summary judgment in favor of the insurer, and Sprinturf appealed. <u>Id.</u> The Third Circuit noted that, "[i]n order for a claim to trigger coverage, there must be a causal nexus between the property damage and an 'occurrence,' <u>i.e.,</u> a fortuitous event. Faulty workmanship, even when cast as a negligence claim, does not constitute such an event; nor do natural and foreseeable events like rainfall." <u>Id.</u> at 231. As such, the Third Circuit affirmed the district court's judgment, in relevant part, as follows:

> [Appellee insurer] was not required to defend Sprinturf because the allegations in the amended complaint do not support a determination that any damage was caused by an 'occurrence.' Any damages to Empire's own work product based on Empire's alleged negligence are claims of damage based on faulty workmanship. Because they are not caused by an accident, under <u>Kvaerner</u>, they are not a covered 'occurrence' under the insurance policy.

Id. at 238.  The Third Circuit reasoned that "water damage to the subgrade was a foreseeable result of the failure to supply a suitable liner or 'to ensure the proper design, manufacture and installation of the synthetic turf and subdrain system.'"  Id. at 239.

Here, Plaintiff has identified the following allegations in the underlying complaint:

9. Prior to September 8, 2013, one or more circuit breakers at the Property started to trip and shut power off to certain portions of Weidner's house.

10. Prior to September 8, 2013, Weidner hired Jumper to come to the Property to investigate why the circuit breakers were tripping and then repair/fix whatever was causing the circuit breakers to trip.

11. Prior to September 8, 2013, Jumper went to the Property to investigate why the circuit breakers were tripping.

12. Prior to September 8, 2013, and upon information and belief, Jumper simply installed larger sized circuit breakers in the circuit breaker panel box at the Property to repair/fix the problem that was causing the circuit breakers to trip at Weidner's house.

13. On September 8, 2013, a fire originated in the electrical wiring at the Property.

14. As a direct and proximate result of the aforementioned fire, the Property was severely damaged and destroyed.

…

17. The damage and destruction to Weidner's Property was caused by and resulted from the negligent, careless and/or reckless acts and/or omissions of Jumper …. Said acts and/or omissions consisted of:

   a) failing to properly and safely inspect the electrical system the Property to determine why circuit breakers were tripping prior to the fire;

   b) failing to properly and safely test the electrical system at  the Property to determine why circuit breakers were tripping prior to the fire;

   c) failing to determine why circuit breakers were tripping at  the Property before commencing repairs on the electrical system;

   d) carelessly and improperly repairing the electrical system at the Property prior to the fire;

   e) repairing the electrical system at the Property in an unsafe and dangerously defective manner;

   f) repairing the electrical system at the Property in an unsafe and dangerously defective manner that Jumper knew or should have known posed an unreasonable risk of harm to Weidner's Property;

   g) failing to detect and correct the dangerous and unsafe conditions in the electrical system at the Property that Jumper knew or should have known existed and posed an unreasonable risk of harm to Weidner's Property;

…

    j)   failing to properly and safely test the electrical system at the Property
         after Jumper repaired it prior to the fire;
    k)   causing and/or permitting the aforesaid fire;

                                        …

(Doc. Nos. 15 ¶¶ 10-11; 16-2 ¶¶ 9-14, 17; 18 ¶¶ 10-11.)

In essence, the Underlying Action alleges that Weidner hired Defendant to repair the circuit breakers at Weidner's home, Defendant "improperly" repaired the electrical system, and Defendant caused damage to Weidner's home.  (See Doc. No. 16-2 ¶¶ 9-14.)  The Underlying Action alleges nothing fortuitous about the fire originating in the electrical wiring or the resulting damage to the home.  (Id.)  Rather, the Underlying Action alleges that the "damage and destruction to Weidner's Property was caused by and resulted from the negligent, careless and/or reckless acts and/or omissions of [Defendant] Jumper."  (Id. ¶ 17.)

Accordingly, the Court finds that the Underlying Action alleges a claim of faulty workmanship, albeit cast as a claim of negligence, carelessness and/or recklessness.  (Id.)  See, e.g., State Farm Fire & Cas. Co. v. Kim's Asia Constr., No. 15-6619, 2016 WL 5848851, at *5 (E.D. Pa. Oct. 5, 2016); Roman Mosaic & Tile Co. v. Liberty Mut. Ins. Co., No. CIV.A. 11-6004, 2012 WL 1138587, at *5 (E.D. Pa. Apr. 5, 2012).  The allegations in the Underlying Action do not involve an "occurrence" as "[f]aulty workmanship, even when cast as a negligence claim, does not constitute such an event."  Specialty Surfaces Int'l, Inc., 609 F.3d at 231. Therefore, Plaintiff has demonstrated the absence of a genuine issue of material fact as to whether it has a duty to defend or to indemnify Defendant against the Underlying Action.  The Court will grant judgment as a matter of law in favor of Plaintiff.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff State Farm Fire and Casualty Company's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.